## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LKQ CORPORATION and | ) | Case No. 21-3167 |
| KEYSTONE AUTOMOTIVE | ) | |
| INDUSTRIES, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| HYUNDAI MOTOR AMERICA, INC. | ) | |
| and HYUNDAI MOTOR COMPANY | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT AND INVALIDITY

Plaintiffs LKQ Corporation and Keystone Automotive Industries, Inc. ("LKQ" or "Plaintiffs"), by its attorneys Irwin IP LLC, seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 against Defendants Hyundai Motor America, Inc. and Hyundai Motor Company ("Hyundai" or "Defendants") and allege as follows:

### PARTIES

1.      Plaintiff LKQ Corporation is a corporation organized and existing under the laws of the State of Delaware with its corporate office located at 500 W. Madison Street, Suite 2800, Chicago, Illinois 60661.  LKQ Corporation, by and through its subsidiaries, imports and sells, among other items, commercially successful automotive replacement and repair parts throughout the United States and in this District.

2.      Plaintiff Keystone Automotive Industries, Inc. ("Keystone") is a corporation organized and existing under the laws of the State of California with its corporate office located at 500 W. Madison Street, Suite 2800, Chicago, Illinois 60661.  Keystone is a subsidiary of LKQ

Corporation and distributes aftermarket automotive replacement parts throughout the United States and in this District.

3.      Defendant Hyundai Motor America, Inc. is a corporation duly organized and existing under the laws of the State of California, with its principal place of business located at 10550 Talbert Avenue, Fountain Valley, CA 92708.  On information and belief, Hyundai Motor America, Inc. has the exclusive license granted by Hyundai Motor Company to distribute Hyundai brand vehicles and "genuine" Hyundai parts in the United States.

4.      Hyundai Motor Company is a Korean company located in Seoul, Republic of Korea.  Hyundai Motor Company manufactures and sells automobiles and automobile parts under the Hyundai brand.  Hyundai Motor Company is the owner of the design patents at issue in this complaint.

## NATURE OF THE ACTION

5.      This is a declaratory judgment action seeking a determination that U.S. Patent Nos. D740,980 (the "'980 Patent"); D637,319 (the "'319 Patent"); D736,436 (the "'436 Patent"); D660,474 (the "'474 Patent"); D709,217 (the "'217 Patent"); D618,836 (the "'836 Patent"); D640,812 (the "'812 Patent"); D738,003 (the "'003 Patent"); D739,057 (the "'057 Patent"); D637,743 (the "'743 Patent"); D739,574 (the "'574 Patent"); D743,063 (the "'063 Patent"); D655,835 (the "'835 Patent"); D631,583 (the "'583 Patent"); and D759,865 (the "'865 Patent") (collectively, "Invalid Patents") are invalid as anticipated or obvious over the prior art and purport to cover unpatentable subject matter.

6.      This declaratory judgment action also seeks a determination that U.S. Patent Nos. D740,980 (the "'980 Patent"); D660,474 (the "'474 Patent"); D739,057 (the "'057 Patent"); D637,319 (the "'319 Patent"); D709,217 (the "'217 Patent"); D618,836 (the "'836 Patent");

D655,835 (the "'835 Patent"); D631,583 (the "'583 Patent"); and D759,865 (the "'865 Patent") (collectively, "Non-Infringed Patents") are not infringed by the plaintiffs herein. The Invalid Patents and Non-infringed Patents, collectively, shall be referred to as the "Patents-in-Suit".

7.    This action arises from affirmative measures taken by Hyundai to interfere with LKQ's business operations by asserting that vehicle parts distributed by LKQ infringe Hyundai's Patents-in-Suit. Exhibit 1.

## HISTORICAL CONTEXT

8.    The automotive "aftermarket" industry generally consists of the market for replacement parts, accessories, and services for repairing or replacing the "original equipment" included in an automobile when it was first sold by the original equipment manufacturer ("OEM"). Aftermarket replacement parts are newly manufactured parts designed to replace damaged or worn original equipment parts in order to return the vehicle to its original condition, as the vast majority of those seeking to repair their vehicle desire their vehicle to be returned to its original condition in the event it has been damaged or otherwise become worn.

9.    The automotive aftermarket industry, including that aspect of the industry consisting of replacement parts made and offered by third parties unaffiliated with the OEM to replace damaged or worn original equipment parts, is almost as old as the automobile itself and has served automobile owners as a crucial source for replacement parts for over a century. On information and belief, the modern automotive aftermarket industry traces its origins to the formation of the Motor and Accessory Manufacturers Association in 1904, sixty-three years before Hyundai Motor Company was founded and eighty-two years before Hyundai Motor America was founded, and has been furnishing essential parts and services to automobile owners across America ever since. On information and belief, the United States' automotive aftermarket industry

3

generates over $400 billion in annual revenue and employs approximately 4.7 million people.

10.     Throughout its history, the aftermarket industry has enabled American automobile owners to fully realize the value of their automotive investments by providing access to critical and affordable replacement parts. Due to the substantial value of any given automobile as a whole, an automobile can—and would be expected to—survive the lifespan of many of its constituent components, thus necessitating replacement of those parts that wear out or are damaged. However, each automobile model is manufactured differently, and a part built for a given manufacturer's automobile would typically not fit another automobile model from the same manufacturer, much less those built by a different manufacturer. Thus, in the absence of aftermarket replacement parts, there would only be a single source for replacement parts for a given automobile model: the OEM, rendering each vehicle model a miniature monopoly market unto itself. With no competition to exert downward pressure on prices and with owners locked in by their initial purchases, automakers would be free to charge whatever price would maximize their own profits. Vehicle owners would be forced to either pay the OEM's price, extract and reuse parts from scrapped automobiles of the same model if such parts are available in acceptable condition (a different proposition than new aftermarket parts), make do with mismatched replacement parts (which would have to be forced to fit via extensive and costly modification and unacceptable in any conceivable marketplace), or do without entirely, depreciating the value of their substantial investment in, and the utility of, the vehicle. By providing automobile owners with a non-OEM source of replacement parts for their automobiles, the aftermarket industry has historically injected crucial competition into what would otherwise be a captive and monopolized market, exerting downward pressure on prices and forcing OEMs to offer replacement parts for relatively lower prices. Throughout substantially the entirety of automotive history, the aftermarket industry has

4

provided not only the grease that keeps the gears smoothly turning, but often the gears as well.

11.     In the mid-to-late 2000s, OEMs began to zero in on design patents as an avenue not only for protecting their whole vehicle designs from competing automakers (a legitimate use of such intellectual property), but for monopolizing the replacement parts market for their vehicles by obtaining design patents for individual exterior parts.  OEMs then brought these patents to bear against the aftermarket industry via what Congresswoman Zoe Lofgren described during a March 22, 2010, House Judiciary Committee hearing as, "creative enforcement" of that intellectual property.  Design Patents and Auto Replacement Parts, Hearing Before the H. Comm. on the Judiciary, 111th Cong. (2010).  Throughout this effort, the OEMs sought to brand this dispute—a bid to seize monopoly revenue—in misleading moralistic terms.  Specifically, OEMs began describing the venerable aftermarket replacement parts industry participants, which had for a century supported their customers and breathed value into their products, as "unscrupulous," despite the inherent absurdity, in context, of such a characterization (a dissonance noted by the House Judiciary Committee at the time).

12.     Tellingly, Hyundai's runaway patent acquisition practices clamp down not on derivative designs of its vehicle, but on aftermarket industry competition in the replacement parts market.  Hyundai's goal is to lock Hyundai vehicle owners into purchasing only those replacement parts that Hyundai allows them to use for the fifteen-year term of Hyundai's design patents.

13.     By thus capturing the market, Hyundai opens the door to extract ever-increasing premiums from their customers after locking them in with the initial sale without any notice to consumers at the time of sale of the patent strategy designed to eliminate consumer choice.  This strategy is designed to elevate Hyundai's profits at the expense of elevating consumers' costs of maintaining Hyundai vehicles, increasing insurance costs, and increasing the rate at which

Hyundai vehicles would be declared total losses upon suffering collision damage that would otherwise be reparable. All of these harms flow from Hyundai's invalid application of design patents: as shown and alleged herein, Hyundai has asserted patents that are invalid over the prior art and has stretched others well beyond their appropriate scope.

## JURISDICTION AND VENUE

14. The Court has subject matter jurisdiction over this action and the matters pleaded herein under 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and the Patent Act of the United States, 35 U.S.C. § 101, *et seq.*

15. This Court has personal jurisdiction over Defendants because, on information and belief, Defendants have continuous and systematic contacts with the state of Illinois and this Judicial District, have affirmatively directed infringement accusations at LKQ in this Judicial District, and Defendants' submission to personal jurisdiction would be fair and reasonable.

16. Venue against Defendants is proper because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District and Defendants are subject to personal jurisdiction in this Judicial district. 28 U.S.C. § 1391(b)(2) and (3).

## STANDING

17. For many decades, LKQ and its predecessors, and others in a vast aftermarket parts industry, have been offering for sale replacement automotive parts including head lights, tail lights, and more. LKQ's business model in the United States automotive repair parts market is to be a comprehensive source of all automotive body repair parts for its customers. Thus, its general practice is and has been to offer nearly every, if not every, automotive body repair part for virtually

every mainstream vehicle model available unless doing so would be in violation of law (such as if a part were covered by a valid and unlicensed patent).

18.     LKQ products are of a consistently high quality; LKQ carefully monitors its parts production with the objective that all replacement parts meet or exceed the quality of the OEM part it replaces. Due to its long-standing presence in the aftermarket industry and its reputation for quality, LKQ has become a national leader among replacement part providers.

19.     On February 4, 2021, Hyundai sent a letter to LKQ (the "February 4 Hyundai Letter") listing the Patents-in-Suit and LKQ's products that allegedly infringe the patents, and effectively accused LKQ of infringing those design patents. Exhibit 1. LKQ does not believe that it infringes any Hyundai patent.

20.     LKQ has sold and currently offers for sale all of the parts Hyundai accuses of patent infringement.

21.     LKQ intends to sell parts that it believes in good faith not to infringe any Hyundai patent, such as those parts implicated by this complaint. LKQ has initiated this action in furtherance of its intent to sell and to continue to sell the implicated parts in the United States.

22.     By virtue of the foregoing, a substantial controversy exists between the parties that is of sufficient immediacy and concreteness to warrant declaratory relief.

**GENERAL ALLEGATIONS**

23.     The February 4 Hyundai Letter identified a number of automotive parts sold by LKQ, which allegedly correspond to the following Hyundai design patents:

| LKQ Catalog Part No. | Hyundai Design Patent |
|---|---|
| HY2503183C | D740980 |
| HY2503177OE | D637319 |
| HY2804129C | D736436 |
| HY2503168OE | D660474 |
| HY2503175OE | D709217 |
| HY2804117R | D618836 |
| HY2502161C | D640812 |
| HY2503186C | D738003 |
| HY2503188OE | D739057 |
| HY2803115N | D637743 |
| HY2805131C | D739574 |
| HY2803126C | D743063 |
| HY2502163OE | D655835 |
| HY2503158OE | D631583 |
| HY2503185C | D759865 |

Images of the LKQ parts that correspond to the above-listed LKQ part numbers are set forth below. Each of the below-depicted parts is currently being sold by LKQ domestically or internationally, and was asserted by Hyundai to infringe its design patents. Thus, each of the LKQ parts is compared in the table below with the correspondingly referenced Hyundai Design Patents-in-Suit:[1]

---

[1] Images of the parts that are manufactured by an OEM or that are reconditioned or repaired, as well as images of the corresponding patents, are not included because they do not constitute infringement due to the doctrine of patent exhaustion.

| LKQ Part | Hyundai Design Patent |
|---|---|
| HY2503183C<br> | D740980<br>FIG. 2<br> |
| HY2503177OE<br><br>(MANUFACTURED BY OEM) | D637319<br><br>(N/A) |
| HY2804129C<br> | D736436<br>FIG. 2<br> |
| HY2503168OE<br><br>(MANUFACTURED BY OEM) | D660474<br><br>(N/A) |
| HY2503175OE<br><br>(MANUFACTURED BY OEM) | D709217<br><br>(N/A) |

9

| | |
|---|---|
| HY2804117R<br><br>(SOLD AS RECONDITIONED) | D618836<br><br>(N/A) |
| HY2502161C<br> | D640812<br>FIG. 2<br> |
| HY2503186C<br> | D738003<br>FIG. 1<br> |
| HY2503188OE<br><br>(MANUFACTURED BY OEM) | D739057<br><br>(N/A) |

10



| HY2803115N | D637743 |
| HY2805131C | D739574 |
| HY2803126C | D743063 |

| | |
|---|---|
| HY2502163OE<br><br>(MANUFACTURED BY OEM) | D655835<br><br>(N/A) |
| HY2503158OE<br><br>(MANUFACTURED BY OEM) | D631583<br><br>(N/A) |
| HY2503185C<br> | D759865<br>FIG. 2<br> |

24.     Each of the Patents-in-Suit is assigned to Hyundai Motor Company.

**NON-INFRINGEMENT ALLEGATIONS – THE '980 PATENT**

25.     The '980 Patent was filed in the United States on July 18, 2014, claiming priority to a Korean application filed on February 17, 2014.  *See* Exhibit 2.  The '980 Patent issued on October 13, 2015.

26.     The '980 Patent claims "[t]he ornamental design for a head lamp for automobiles, as shown and described."

27.     The below comparison illustrates the alleged infringing part compared to the alleged Hyundai design patent:

| LKQ Part HY2503183C | Hyundai Design Patent D740980 |
|---|---|
|  | |
| Ex. 39 | Ex. 2, FIG 2 |

28.     LKQ does not infringe Hyundai's '980 Patent because an ordinary observer would not be confused into thinking that the design of the part and the design covered by the '532 Patent are substantially similar.

29.     At a minimum, and by way of example, the part produced by LKQ is wider and has the projector as well as turn signal lamps positioned in a different manner than claimed in the '980 Patent.

30.     Thus, LKQ does not infringe the '980 Patent.

## NON-INFRINGEMENT ALLEGATIONS – THE '319 PATENT

31.     The '319 Patent was filed in the United States on May 27, 2010, claiming priority to a Korean application filed on March 29, 2010.  *See* Exhibit 8.  The '319 Patent issued on May 3, 2011.

32.     The '319 Patent claims "[t]he ornamental design for a head lamp for automobiles, as shown and described."

33.     LKQ does not infringe the '319 patent because LKQ only sold parts that were manufactured by an OEM, not replicas.

34.     Thus, LKQ does not infringe the '319 Patent.

13

**NON-INFRINGEMENT ALLEGATIONS – THE '474 PATENT**

35.     The '474 Patent was filed in the United States on January 25, 2011, claiming priority to a Korean application filed on November 26, 2010.  *See* Exhibit 3.  The '474 Patent issued on May 22, 2012.

36.     The '474 Patent claims "[t]he ornamental design for a head lamp for automobiles, as shown and described."

37.     LKQ does not infringe the '474 patent because LKQ only sold parts that were manufactured by an OEM, not replicas.

38.     Thus, LKQ does not infringe the '474 Patent.

**NON-INFRINGEMENT ALLEGATIONS – THE '217 PATENT**

39.     The '217 Patent was filed in the United States on May 10, 2012, claiming priority to a Korean application filed on March 14, 2012.  *See* Exhibit 17.  The '217 Patent issued on July 15, 2014.

40.     The '217 Patent claims "[t]he ornamental design for a head lamp for automobiles, as shown and described."

41.     LKQ does not infringe the '217 patent because LKQ only sold parts that were manufactured by an OEM, not replicas.

42.     Thus, LKQ does not infringe the '217 Patent.

## NON-INFRINGEMENT ALLEGATIONS – THE '836 PATENT

43.     The '836 Patent was filed in the United States on May 10, 2012, claiming priority to a Korean application filed on March 14, 2012.  *See* Exhibit 20.  The '836 Patent issued on July 15, 2014.

44.     The '836 Patent claims "[t]he ornamental design for a head lamp for automobiles, as shown and described."

45.     LKQ does not infringe the '836 patent because LKQ only sold reconditioned/repaired salvage parts, not replicas.

46.     Thus, LKQ does not infringe the '836 Patent.

## NON-INFRINGEMENT ALLEGATIONS – THE '057 PATENT

47.     The '057 Patent was filed in the United States on January 9, 2014, claiming priority to a Korean application filed on July 10, 2013.  *See* Exhibit 4.  The '057 Patent issued on September 15, 2015.

48.     The '057 Patent claims "[t]he ornamental design for a head lamp for automobiles, as shown and described."

49.     LKQ does not infringe the '057 patent because LKQ only sold parts that were manufactured by an OEM, not replicas.

50.     Thus, LKQ does not infringe the '057 Patent.

## NON-INFRINGEMENT ALLEGATIONS – THE '835 PATENT

51.     The '835 Patent was filed in the United States on October 5, 2010, claiming priority to a Korean application filed on July 17, 2010.  *See* Exhibit 34.  The '835 Patent issued on March 13, 2012.

52.     The '835 Patent claims "[t]he ornamental design for a head lamp for automobiles, as shown and described."

53.     LKQ does not infringe the '835 patent because LKQ only sold parts that were manufactured by an OEM, not replicas.

54.     Thus, LKQ does not infringe the '835 Patent.

## NON-INFRINGEMENT ALLEGATIONS – THE '583 PATENT

55.     The '583 Patent was filed in the United States on October 5, 2010, claiming priority to a Korean application filed on July 17, 2010.  *See* Exhibit 35.  The '583 Patent issued on March 13, 2012.

56.     The '583 Patent claims "[t]he ornamental design for a head lamp for automobiles, as shown and described."

57.     LKQ does not infringe the '583 patent because LKQ only sold parts that were manufactured by an OEM, not replicas.

58.     Thus, LKQ does not infringe the '583 Patent.

## NON-INFRINGEMENT ALLEGATIONS – THE '865 PATENT

59.     The '865 Patent was filed in the United States on June 22, 2015, claiming priority to a Korean application filed on January 30, 2015.  *See* Exhibit 5.  The '865 Patent issued on June 21, 2016.

60.     The '865 Patent claims "[t]he ornamental design for a head lamp for automobiles, as shown and described."

61.     The below comparison illustrates the alleged infringing part compared to the alleged Hyundai design patent:

16

| LKQ Part HY2503185C | Hyundai Design Patent D759865 |
|---|---|
|  | |
| Ex. 40 | Ex. 5 |

62. LKQ does not infringe Hyundai's '865 Patent because an ordinary observer would not be confused into thinking that the design of the part and the design covered by the '865 Patent are substantially similar.

63. At a minimum, and by way of example, the part produced by LKQ has different ornamental features at the bottom of the housing and has fewer lights than the design claimed in the '865 Patent.

64. Thus, LKQ does not infringe the '865 Patent.

**INVALIDITY ALLEGATIONS – THE '980 PATENT**

65. The '980 Patent is invalid, at a minimum, as obvious over the prior art.

66. At a minimum, and by way of example, the '980 Patent is obvious over the 2011 Kia Cadenza in light of the 2013 Hyundai Santa Fe.

67. The 2011 Kia Cadenza is a reference that is basically the same as the claimed design of the '980 Patent. The below chart compares exemplary images of the 2011 Kia Cadenza to the claimed design of the '980 Patent:

| '980 PATENT | 2011 KIA CADENZA |
|---|---|
|  Ex. 2, FIG 2. | Ex. 6 |
| Ex. 2, FIG. 1. | Ex. 6 |

68.     The 2011 Kia Cadenza was publicly available, sold, and purchased by consumers, and images of the 2011 Kia Cadenza were publicly available, at least as early as 2011, and it thus constitutes prior art under at least 35 U.S.C. § 102(a)(1).

69.     Any difference between the '980 Patent and the 2011 Kia Cadenza is suggested by the secondary reference, the 2013 Hyundai Santa Fe.  *See* Exhibit 7.

70.     The appearance of the headlight of the 2013 Hyundai Santa Fe is so related to the 2011 Kia Cadenza that the appearance of features in one would suggest the application to the other:

18



| 2011 KIA CADENZA | 2013 HYUNDAI SANTA FE |
|---|---|
| Ex. 6 | Ex. 7 |

71.    The headlight of the 2011 Kia Cadenza has a similar overall shape as the 2013 Hyundai Santa Fe headlight.

72.    The 2013 Hyundai Santa Fe was publicly available, sold, and purchased by consumers, and images of the 2013 Hyundai Santa Fe were publicly available at least as early as 2013, and it thus constitutes prior art under at least 35 U.S.C. § 102(a)(1).

73.    The features of the 2011 Kia Cadenza combined with the 2013 Hyundai Santa Fe would create a design with substantially the same overall visual appearance as the '980 Patent.

74.    Given the relatedness in designs, an ordinary designer would have been motivated to combine the 2011 Kia Cadenza with the 2013 Hyundai Santa Fe to arrive at a design that is substantially the same as the claimed design of the '980 Patent.

75.    Thus, the '980 Patent is invalid, at a minimum, as obvious.

**INVALIDITY ALLEGATIONS – THE '319 PATENT**

76.    The '319 Patent is invalid, at a minimum, as obvious over the prior art.

19

77.     At a minimum, and by way of example, the '319 Patent is obvious over the 2009 Geely GT Tiger in light of the 2009 Hyundai IX-ONIC Concept.

78.     The 2009 Geely GT Tiger is a reference that is basically the same as the claimed design of the '319 Patent.  The below chart compares exemplary images of the 2009 Geely GT Tiger to the claimed design of the '319 Patent:



| '319 PATENT | 2009 GEELY GT TIGER |
|:---:|:---:|
| Ex. 8, FIG. 2. | Ex. 9 |
| Ex. 8, FIG. 4. | Ex. 9 |

20

79.     The 2009 Geely GT Tiger was publicly available, sold, and purchased by consumers, and images of the 2009 Geely GT Tiger were publicly available at least as early as 2009, and it thus constitutes prior art under at least 35 U.S.C. § 102(a) and 102(b).

80.     Any difference between the '319 Patent and the Geely GT Tiger is suggested by the secondary reference, the 2009 Hyundai IX-ONIC concept.  *See* Exhibit 10.

81.     The appearance of the headlight of the 2009 Hyundai IX-ONIC concept is so related to the 2009 Geely GT Tiger that the appearance of features in one would suggest the application to the other:

| **2009 Geely GT Tiger** | **2009 Hyundai IX-ONIC** |
|---|---|
|  | |
| Ex. 9 | Ex. 10 |

82.     The 2009 Hyundai IX-ONIC was publicly available, sold, and purchased by consumers, and images of the 2009 Hyundai IX-ONIC were publicly available at least as early as 2009, and it thus constitutes prior art under at least 35 U.S.C. § 102(a) and 102(b).

83.     The features of the 2009 Geely GT Tiger combined with the 2009 Hyundai IX-ONIC would create a design with substantially the same overall visual appearance as the '319 Patent.

21

84.     Given the relatedness in designs, an ordinary designer would have been motivated to combine the 2009 Geely GT Tiger with the Hyundai IX-ONIC to arrive at a design that is substantially the same as the claimed design of the '319 Patent.

85.     Thus, the '319 Patent is invalid, at a minimum, as obvious.

## INVALIDITY ALLEGATIONS – THE '436 PATENT

86.     The '436 Patent is invalid, at a minimum, as obvious over the prior art.

87.     At a minimum, and by way of example, the '436 Patent is obvious over the Korean Design Registration No. 3006336890000 in light of 2012 Chevrolet Onix.

88.     The Korean Design Registration No. 3006336890000 is a reference that is basically the same as the claimed design of the '436 Patent.  The below chart compares exemplary images of the Korean Design Registration No. 3006336890000 to the claimed design of the '436 Patent:

| '436 PATENT | KOREAN DESIGN REGISTRATION NO. 3006336890000 |
|---|---|
|  Ex. 11, FIG 1 |  Ex. 12 |

22



| Ex. 11, FIG. 2 | Ex. 12 |

89.    The Korean Design Registration No. 3006336890000 was publicly available at least as early as March 20, 2012, and it thus constitutes prior art under at least 35 U.S.C. § 102(a).

90.    Any difference between the '436 Patent and the Korean Design Registration No. 3006336890000 is suggested by the secondary reference, the 2012 Chevrolet Onix.  *See* Exhibit 13.

91.    The appearance of the 2012 Chevrolet Onix is so related to the Korean Design Registration No. 3006336890000 that the appearance of features in one would suggest the application to the other:

| KOREAN DESIGN REGISTRATION NO. 3006336890000 | 2012 CHEVROLET ONIX |
|---|---|
|  Ex. 12 |  Ex. 13 |

92.     The light of the Korean Design Registration No. 3006336890000 has a similar overall shape as the 2012 Chevrolet Onix headlight.

93.     The 2012 Chevrolet Onix was publicly available, sold, and purchased by consumers, and images of the 2012 Chevrolet Onix were publicly available at least as early as 2012, and it thus constitutes prior art under at least 35 U.S.C. § 102(a).

94.     The features of the Korean Design Registration No. 3006336890000 combined with the 2012 Chevrolet Onix would create a design with substantially the same overall visual appearance as the '436 Patent.

95.     Given the relatedness in designs, an ordinary designer would have been motivated to combine the Korean Design Registration No. 3006336890000 with the 2012 Chevrolet Onix to arrive at a design that is substantially the same as the claimed design of the '436 Patent.

96.     Thus, the '436 Patent is invalid, at a minimum, as obvious.

## INVALIDITY ALLEGATIONS – THE '474 PATENT

97.     The '474 Patent is invalid, at a minimum, as obvious over the prior art.

24

98.     At a minimum, and by way of example, the '474 Patent is obvious over the 2005 Citroen C-Sport Lounge Concept Car in light of the D505,214 patent.

99.     The 2005 Citroen C-Sport Lounge Concept Car is a reference that is basically the same as the claimed design of the '474 Patent.  The below chart compares exemplary images of the 2005 Citroen C-Sport Lounge Concept Car to the claimed design of the '474 Patent:



| '474 PATENT | 2005 CITROEN C-SPORT LOUNGE CONCEPT CAR |
|---|---|
| Ex. 3, FIG 1. | Ex. 15 |
| Ex. 3, FIG. 2. | Ex. 15 |

100.     The 2005 Citroen C-Sport Lounge Concept Car was publicly available at least as early as 2005, and it thus constitutes prior art under at least 35 U.S.C. § 102(a).

25

101. Any difference between the '474 Patent and the 2005 Citroen C-Sport Lounge Concept Car is suggested by the secondary reference, the D505,214 patent. *See* Exhibit 16.

102. The appearance of the D505,214 patent's claim is so related to the 2005 Citroen C-Sport Lounge Concept Car that the appearance of features in one would suggest the application to the other:



| 2005 CITROEN C-SPORT LOUNGE CONCEPT CAR | D505,214 |
|---|---|
| Ex. 15 | Ex. 16, FIG. 7 |
| Ex. 15 | Ex. 16 |

103. The headlight of the 2005 Citroen C-Sport Lounge Concept Car has a similar overall shape as the D505,214 patent's claimed design.

26

104.     The priority date of the D505,214 patent is January 20, 2004, and it thus constitutes prior art under at least 35 U.S.C. § 102(b).

105.     The features of the 2005 Citroen C-Sport Lounge Concept Car combined with the D505,214 patent would create a design with substantially the same overall visual appearance as the '474 Patent.

106.     Given the relatedness in designs, an ordinary designer would have been motivated to combine the 2005 Citroen C-Sport Lounge Concept Car with the D505,214 patent to arrive at a design that is substantially the same as the claimed design of the '474 Patent.

107.     Thus, the '474 Patent is invalid, at a minimum, as obvious.

## INVALIDITY ALLEGATIONS – THE '217 PATENT

108.     The '217 Patent is invalid, at a minimum, as obvious over the prior art.

109.     At a minimum, and by way of example, the '217 Patent is obvious over the 2012 Citroen DS5 in light of the 2012 Hyundai Accent.

110.     The 2012 Citroen DS5 is a reference that is basically the same as the claimed design of the '217 Patent.  The below chart compares exemplary images of the 2012 Citroen DS5 to the claimed design of the '217 Patent:



| '217 PATENT | 2012 CITROEN DS5 |
|---|---|
| Ex. 17, FIG 1 | Ex. 18 |
| Ex. 17, FIG. 2 | Ex. 18 |

111.     The 2012 Citroen DS5 was publicly available at least as early as 2012, and it thus constitutes prior art under at least 35 U.S.C. § 102(a).

112.     Any difference between the '217 Patent and the 2012 Citroen DS5 is suggested by the secondary reference, the 2012 Hyundai Accent.  *See* Exhibit 19.

113.     The appearance of the 2012 Hyundai Accent is so related to the 2012 Citroen DS5 that the appearance of features in one would suggest the application to the other:

28

| 2012 CITROEN DS5 | 2012 HYUNDAI ACCENT |
|:---:|:---:|
|  | |
| Ex. 18 | Ex. 19 |

114.    The headlight of the 2012 Citroen DS5 has a similar overall shape as the 2012 Hyundai Accent.

115.    The 2012 Hyundai Accent was publicly available, sold, and purchased by consumers, and images of the 2012 Hyundai Accent were publicly available at least as early as 2012, and it thus constitutes prior art under at least 35 U.S.C. § 102(a).

116.    The features of the 2012 Citroen DS5 combined with the 2012 Hyundai Accent would create a design with substantially the same overall visual appearance as the '217 Patent.

117.    Given the relatedness in designs, an ordinary designer would have been motivated to combine the 2012 Citroen DS5 with the 2012 Hyundai Accent to arrive at a design that is substantially the same as the claimed design of the '217 Patent.

118.    Thus, the '217 Patent is invalid, at a minimum, as obvious.

## INVALIDITY ALLEGATIONS – THE '836 PATENT

119.    The '836 Patent is invalid, at a minimum, as obvious over the prior art.

120.    At a minimum, and by way of example, the '836 Patent is obvious over Korean Registration No. 3003981340000 in light of Korean Registration No. 3003469470000.

29

121.    Korean Registration No. 3003981340000 is a reference that is basically the same as the claimed design of the '836 Patent.  The below chart compares exemplary images of the Korean Registration No. 3003981340000 to the claimed design of the '836 Patent:

| '836 PATENT | KOREAN REGISTRATION NO. 3003981340000 |
|---|---|
|  Ex. 20, FIG 1 |  Ex. 21 |
|  Ex. 20, FIG. 2 |  Ex. 21 |

122.    The priority date of Korean Registration No. 3003981340000 is November 9, 2005, and it thus constitutes prior art under at least 35 U.S.C. § 102(b).

123.    Any difference between the '836 Patent and Korean Registration No. 3003981340000 is suggested by the secondary reference, Korean Registration No. 3003469470000.  *See* Exhibit 22.

30

124. The appearance of the claimed design of Korean Registration No. 3003469470000 is so related to the claimed design of Korean Registration No. 3003981340000 that the appearance of features in one would suggest the application to the other:

| KOREAN REGISTRATION NO.<br><br>3003981340000 | KOREAN REGISTRATION NO.<br><br>3003469470000 |
| --- | --- |
| <br><br>Ex. 21 | <br><br>Ex. 22 |
| <br><br>Ex. 21 | <br><br>Ex. 22 |

125. The light of Korean Registration No. 3003981340000 has a similar overall shape as the Korean Registration No. 3003469470000.

126. The Korean Registration No. 3003469470000 has a priority date of March 19, 2004, and it thus constitutes prior art under at least 35 U.S.C. § 102(b).

127. The features of Korean Registration No. 3003981340000 combined with Korean Registration No. 3003469470000 would create a design with substantially the same overall visual appearance as the '836 Patent.

31

128.    Given the relatedness in designs, an ordinary designer would have been motivated to combine Korean Registration No. 3003981340000 with Korean Registration No. 3003469470000 to arrive at a design that is substantially the same as the claimed design of the '836 Patent.

129.    Thus, the '836 Patent is invalid, at a minimum, as obvious.

## INVALIDITY ALLEGATIONS – THE '812 PATENT

130.    The '812 Patent is invalid, at a minimum, as obvious over the prior art.

131.    At a minimum, and by way of example, the '812 Patent is obvious over the 2009 Geely GT Tiger in light of the 2009 Hyundai IX-ONIC Concept.

132.    The 2009 Geely GT Tiger is a reference that is basically the same as the claimed design of the '812 Patent.  The below chart compares exemplary images of the 2009 Geely GT Tiger to the claimed design of the '812 Patent:



| **'812 PATENT** | **2009 GEELY GT TIGER** |
|---|---|
| Ex. 25, FIG. 2 | Ex. 9 |
| Ex. 25, FIG. 1 | Ex. 9 |

133.    The 2009 Geely GT Tiger was publicly available, sold, and purchased by consumers, and images of the 2009 Geely GT Tiger were publicly available at least as early as 2011, and it thus constitutes prior art under at least 35 U.S.C. § 102(a) and 102(b).

134.    Any difference between the '812 Patent and the Geely GT Tiger is suggested by the secondary reference, the 2009 Hyundai IX-ONIC concept.  *See* Exhibit 10.

135.    The appearance of the headlight of the 2009 Hyundai IX-ONIC concept is so related to the 2009 Geely GT Tiger that the appearance of features in one would suggest the application to the other:

| **2009 Geely GT Tiger** | **2009 Hyundai IX-ONIC** |
|---|---|
|  | |
| Ex. 9 | Ex. 10 |

136.    The 2009 Hyundai IX-ONIC was publicly available, sold, and purchased by consumers, and images of the 2009 Hyundai IX-ONIC were publicly available at least as early as 2009, and it thus constitutes prior art under at least 35 U.S.C. § 102(a) and 102(b).

137.    The additional features of the 2009 Geely GT Tiger combined with the 2009 Hyundai IX-ONIC would create a design with substantially the same overall visual appearance as the '812 Patent.

138.    Given the relatedness in designs, an ordinary designer would have been motivated to combine the 2009 Geely GT Tiger with the Hyundai IX-ONIC to arrive at a design that is substantially the same as the claimed design of the '812 Patent.

139.    Thus, the '812 Patent is invalid, at a minimum, as obvious.

## INVALIDITY ALLEGATIONS – THE '003 PATENT

140.     The '003 Patent is invalid, at a minimum, as obvious over the prior art.

141.     At a minimum, and by way of example, the '003 Patent is obvious over the D664,690 patent in light of the 2012 Hyundai Accent.

142.     The D664,690 patent is a reference that is basically the same as the claimed design of the '003 Patent. The below chart compares exemplary images of the D664,690 patent to the claimed design of the '003 Patent:

| '003 PATENT | D664,690 |
|:---:|:---:|
|  Ex. 23, FIG. 1 |  Ex. 24, FIG. 1 |
|  Ex. 23, FIG. 2 |  Ex. 24, FIG. 2 |

143.    The priority date of the D664,690 patent is Oct. 21, 2011, and it thus constitutes prior art under at least 35 U.S.C. § 102(a)(1).

144.    Any difference between the '003 Patent and the D664,690 patent is suggested by the secondary reference, the 2012 Hyundai Accent.  *See* Exhibit 19.

145.    The appearance of the headlight of the 2012 Hyundai Accent is so related to the D664,690 patent that the appearance of features in one would suggest the application to the other:

| D664,690 | 2012 HYUNDAI ACCENT |
|---|---|
|  Ex. 24, FIG. 1 | Ex. 19 |

146.    The 2012 Hyundai Accent was publicly available, sold, and purchased by consumers, and images of the 2012 Hyundai Accent were publicly available at least as early as 2012, and it thus constitutes prior art under at least 35 U.S.C. § 102(a)(1).

147.    The features of the D664,690 combined with the 2012 Hyundai Accent would create a design with substantially the same overall visual appearance as the '003 Patent.

148.    Given the relatedness in designs, an ordinary designer would have been motivated to combine the D664,690 patent with the 2012 Hyundai Accent to arrive at a design that is substantially the same as the claimed design of the '003 Patent.

149.    Thus, the '003 Patent is invalid, at a minimum, as obvious.

36

## INVALIDITY ALLEGATIONS – THE '057 PATENT

150.    The '057 Patent is invalid, at a minimum, as obvious over the prior art.

151.    At a minimum, and by way of example, the '057 Patent is obvious over the D640,812 patent in light of the 2012 Hyundai Accent.

152.    The D640,812 patent is a reference that is basically the same as the claimed design of the '057 Patent.  The below chart compares exemplary images of D640,812 to the claimed design of the '057 Patent:

| '057 PATENT | D640,812 |
|---|---|
| <br>Ex. 4, FIG. 1 | <br>Ex. 25, FIG. 1 |
| <br>Ex. 4, FIG. 2 | <br>Ex. 25, FIG. 2 |

153. The priority date of the D640,812 patent is Apr. 26, 2010, and it thus constitutes prior art under at least 35 U.S.C. § 102(a)(1).

154. Any difference between the '057 Patent and the D640,812 patent is suggested by the secondary reference, the 2012 Hyundai Accent. *See* Exhibit 19.

155. The appearance of the headlight of the 2012 Hyundai Accent is so related to the D640,812 patent that the appearance of features in one would suggest the application to the other:

| D640,812 | 2012 HYUNDAI ACCENT |
|---|---|
| Ex. 25, FIG. 2 | Ex. 19 |

156. The 2012 Hyundai Accent was publicly available, sold, and purchased by consumers, and images of the 2012 Hyundai Accent were publicly available at least as early as 2012, and it thus constitutes prior art under at least 35 U.S.C. § 102(a)(1).

157. The features of the D640,812 patent combined with the 2012 Hyundai Accent would create a design with substantially the same overall visual appearance as the '057 Patent.

158. Given the relatedness in designs, an ordinary designer would have been motivated to combine the D640,812 patent with the 2012 Hyundai Accent to arrive at a design that is substantially the same as the claimed design of the '057 Patent.

159. Thus, the '057 Patent is invalid, at a minimum, as obvious.

38

## INVALIDITY ALLEGATIONS – THE '743 PATENT

160.    The '743 Patent is invalid, at a minimum, as obvious over the prior art.

161.    At a minimum, and by way of example, the '743 Patent is obvious over the D527,839 patent in light of the 2007 Hyundai Veracruz.

162.    The D527,839 is a reference that is basically the same as the claimed design of the '743 Patent.  The below chart compares exemplary images of the D527,839 patent to the claimed design of the '743 Patent:

| '743 PATENT | D527,839 |
|---|---|
|  Ex. 28, FIG. 1 |  Ex. 27 |
|  Ex. 28, FIG. 2 |  Ex. 27 |

163.    The priority date of the D640,812 patent is Sep. 28, 2005, and it thus constitutes prior art under at least 35 U.S.C. § 102(a) and (b).

164.    Any difference between the '743 Patent and the D527,839 patent is suggested by the secondary reference, the 2007 Hyundai Veracruz.  *See* Exhibit 26.

165.    The appearance of the headlight of 2007 Hyundai Veracruz is so related to the D527,839 patent that the appearance of features in one would suggest the application to the other:



| D527,839 | 2007 HYUNDAI VERACRUZ |
|---|---|
| FIG 1<br><br>Ex. 27 | Ex. 26 |
| FIG 2<br><br>Ex. 27 | Ex. 26 |

166.    The 2007 Hyundai Veracruz was publicly available, sold, and purchased by consumers, and images of the 2007 Hyundai Veracruz were publicly available at least as early as 2007, and it thus constitutes prior art under at least 35 U.S.C. § 102(a) and (b).

167.     The features of the D527,839 patent combined with the 2007 Hyundai Veracruz would create a design with substantially the same overall visual appearance as the '743 Patent.

168.     Given the relatedness in designs, an ordinary designer would have been motivated to combine the D527,839 with the 2007 Hyundai Veracruz to arrive at a design that is substantially the same as the claimed design of the '743 Patent.

169.     Thus, the '743 Patent is invalid, at a minimum, as obvious.

## INVALIDITY ALLEGATIONS – THE '574 PATENT

170.     The '574 Patent is invalid, at a minimum, as obvious over the prior art.

171.     At a minimum, and by way of example, the '574 Patent is obvious over European Design No. 001770249-0001.

172.     European Design No. 001770249-0001 is a reference that is basically the same as the claimed design of the '574 Patent.  The below chart compares exemplary images of European Design No. 001770249-0001 to the claimed design of the '574 Patent:

| '574 PATENT | EUROPEAN DESIGN No. 001770249-0001 |
|---|---|
|  Ex. 29, FIG. 1 |  Ex. 30 |
|  Ex. 29, FIG. 2 |  Ex. 30 |

173.    The priority date of European Design No. 001770249-0001 is November 24, 2010, and it thus constitutes prior art under at least 35 U.S.C. § 102(a)(1).

174.    Given the relatedness in designs, an ordinary designer would have used European Design No. 001770249-0001 to arrive at a design that is substantially the same as the claimed design of the '574 Patent.

175.    Thus, the '574 Patent is invalid, at a minimum, as obvious.

42

## INVALIDITY ALLEGATIONS – THE '063 PATENT

176.    The '063 Patent is invalid, at a minimum, as obvious over the prior art.

177.    At a minimum, and by way of example, the '063 Patent is obvious over the 2011 Hyundai Sonata in light of Chinese Registration No. 301560253.

178.    The 2011 Hyundai Sonata is a reference that is basically the same as the claimed design of the '063 Patent.   The below chart compares exemplary images of the 2011 Hyundai Sonata to the claimed design of the '063 Patent:



| '063 PATENT | 2011 HYUNDAI SONATA |
|---|---|
| Ex. 31, FIG. 2 | Ex. 32 |

179.    The 2011 Hyundai Sonata was publicly available, sold, and purchased by consumers, and images of the 2011 Hyundai Sonata were publicly available at least as early as 2011, and it thus constitutes prior art under at least 35 U.S.C. § 102(a)(1).

180.    Any difference between the '063 Patent and the 2011 Hyundai Sonata is suggested by the secondary reference, Chinese Registration No. 301560253.  *See* Exhibit 33.

181.    The appearance of the light of Chinese Registration No. 301560253 is so related to the 2011 Hyundai Sonata that the appearance of features in one would suggest the application to the other:

| 2011 HYUNDAI SONATA | CHINESE REGISTRATION NO. 301560253 |
|---|---|
|  Ex. 32 | Ex. 33 |

182.    The priority date of Chinese Registration No. 301560253 is May 25, 2011, and it thus constitutes prior art under at least 35 U.S.C. § 102(a)(1).

183.    The features of the 2011 Hyundai Sonata combined with Chinese Registration No. 301560253 would create a design with substantially the same overall visual appearance as the '063 Patent.

184.    Given the relatedness in designs, an ordinary designer would have been motivated to combine the 2011 Hyundai Sonata with Chinese Registration No. 301560253 to arrive at a design that is substantially the same as the claimed design of the '063 Patent.

185.    Thus, the '063 Patent is invalid, at a minimum, as obvious.

## INVALIDITY ALLEGATIONS – THE '835 PATENT

186.    The '835 Patent is invalid, at a minimum, as obvious over the prior art.

44

187.    At a minimum, and by way of example, the '835 Patent is obvious over the 2009 Geely GT Tiger in light of the 2009 Hyundai IX-ONIC Concept.

188.    The 2009 Geely GT Tiger is a reference that is basically the same as the claimed design of the '835 Patent.  The below chart compares exemplary images of the 2009 Geely GT Tiger to the claimed design of the '835 Patent:



| '835 PATENT | 2009 GEELY GT TIGER |
|:---:|:---:|
| Ex. 34, FIG. 2 | Ex. 9 |
| Ex. 34, FIG. 1 | Ex. 9 |

189.    The 2009 Geely GT Tiger was publicly available, sold, and purchased by consumers, and images of the 2009 Geely GT Tiger were publicly available at least as early as 2011, and it thus constitutes prior art under at least 35 U.S.C. § 102(a) and 102(b).

190.    Any difference between the '835 Patent and the Geely GT Tiger is suggested by the secondary reference, the 2009 Hyundai IX-ONIC concept.  *See* Exhibit 10.

191.    The appearance of the headlight of the 2009 Hyundai IX-ONIC concept is so related to the 2009 Geely GT Tiger that the appearance of features in one would suggest the application to the other:

| **2009 Geely GT Tiger** | **2009 Hyundai IX-ONIC** |
|---|---|
|  Ex. 9 | Ex. 10 |

192.    The 2009 Hyundai IX-ONIC was publicly available and images of the 2009 Hyundai IX-ONIC were publicly available at least as early as 2009, and it thus constitutes prior art under at least 35 U.S.C. § 102(a) and 102(b).

193.    The features of the 2009 Geely GT Tiger combined with the 2009 Hyundai IX-ONIC would create a design with substantially the same overall visual appearance as the '835 Patent.

46

194.     Given the relatedness in designs, an ordinary designer would have been motivated to combine the 2009 Geely GT Tiger with the Hyundai IX-ONIC to arrive at a design that is substantially the same as the claimed design of the '835 Patent.

195.     Thus, the '835 Patent is invalid, at a minimum, as obvious.

## INVALIDITY ALLEGATIONS – THE '583 PATENT

196.     The '583 Patent is invalid, at a minimum, as obvious over the prior art.

197.     At a minimum, and by way of example, the '583 Patent is obvious over the 2007 Hyundai Veracruz in light of the 2006 Ford S-Max.

198.     The 2007 Hyundai Veracruz is a reference that is basically the same as the claimed design of the '583 Patent.  The below chart compares exemplary images of the 2007 Hyundai Veracruz to the claimed design of the '583 Patent:



| '583 PATENT | 2007 HYUNDAI VERACRUZ |
|---|---|
| Ex. 35, FIG. 1 | Ex. 26 |
| Ex. 35, FIG. 2 | Ex. 26 |

199.    The 2007 Hyundai Veracruz was publicly available, sold, and purchased by consumers, and images of the 2007 Hyundai Veracruz were publicly available at least as early as 2007, and it thus constitutes prior art under at least 35 U.S.C. § 102(a) and 102(b).

200.    Any difference between the '583 Patent and the 2007 Hyundai Veracruz is suggested by the secondary reference, the 2006 Ford S-Max. *See* Exhibit 36.

201.    The appearance of the headlight of the 2006 Ford S-Max is so related to 2007 Hyundai Veracruz that the appearance of features in one would suggest the application to the other:

| 2007 HYUNDAI VERACRUZ | 2006 FORD S-MAX |
|---|---|



| Ex. 26 | Ex. 36 |
|---|---|
| Ex. 26 | Ex. 36 |

202. The 2006 Ford S-Max was publicly available, sold, and purchased by consumers, and images of the 2006 Ford S-Max were publicly available at least as early as 2006, and it thus constitutes prior art under at least 35 U.S.C. § 102(a) and 102(b).

203. The features of the 2007 Hyundai Veracruz combined with the 2006 Ford S-Max would create a design with substantially the same overall visual appearance as the '583 Patent.

204. Given the relatedness in designs, an ordinary designer would have been motivated to combine the 2007 Hyundai Veracruz with the 2006 Ford S-Max to arrive at a design that is substantially the same as the claimed design of the '583 Patent.

205. Thus, the '583 Patent is invalid, at a minimum, as obvious.

49

## INVALIDITY ALLEGATIONS – THE '865 PATENT

206.     The '865 Patent is invalid, at a minimum, as obvious over the prior art.

207.     At a minimum, and by way of example, the '865 Patent is obvious over the 2015 Ford Focus in light of the 2013 Peugeot 4008.

208.     The 2015 Ford Focus is a reference that is basically the same as the claimed design of the '865 Patent.  The below chart compares exemplary images of the 2015 Ford Focus to the claimed design of the '865 Patent:

| '865 PATENT | 2015 FORD FOCUS |
|:---:|:---:|
|  Ex. 37, FIG. 1 |  Ex. 38 |
|  Ex. 37, FIG. 2 |  Ex. 38 |

209.    The 2015 Ford Focus was publicly available, sold, and purchased by consumers, and images of the 2015 Ford Focus were publicly available at least as early as 2015, and it thus constitutes prior art under at least 35 U.S.C. § 102(a)(1).

210.    Any difference between the '865 Patent and the 2015 Ford Focus is suggested by the secondary reference, the 2013 Peugeot 4008. *See* Exhibit 14.

211.    The appearance of the headlight of the 2013 Peugeot 4008 is so related to the 2015 Ford Focus that the appearance of features in one would suggest the application to the other:



| 2015 FORD FOCUS | 2013 Peugeot 4008 |
|---|---|
| Ex. 38 | Ex. 14 |
| Ex. 38 | Ex. 14 |

212.    The 2013 Peugeot 4008 was publicly available, sold, and purchased by consumers, and images of the 2013 Peugeot 4008 were publicly available at least as early as 2013, and it thus constitutes prior art under at least 35 U.S.C. § 102(a)(1).

213.    The additional features of the 2015 Ford Focus combined with the 2013 Peugeot 4008 would create a design with substantially the same overall visual appearance as the '865 Patent.

214.    Given the relatedness in designs, an ordinary designer would have been motivated to combine the 2015 Ford Focus with the 2013 Peugeot 4008 to arrive at a design that is substantially the same as the claimed design of the '865 Patent.

215.    Thus, the '865 Patent is invalid, at a minimum, as obvious.

**INVALIDITY ALLEGATIONS – UNPATENTABLE COMPONENTS**

216.    The Invalid Patents are invalid because they are designs applied to component parts that have no independent functionality, and therefore empower Hyundai with the ability to improperly subvert the exhaustion doctrine and prevent consumers from exercising their right to repair their own vehicles.

217.    Design patents are limited to "articles of manufacture." 35. U.S.C. § 171.

218.    The original meaning of an "article of manufacture" was an article that was complete in itself, and not a part or sub-part of something that needed further assembly to be functional.[2]

---

[2] LKQ believes that there is a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law regarding the patentability of functionless component parts. *See, e.g.*, Sarah Burstein, *The "Article of Manufacture" in 1887*, 32 BERKELEY TECH. L.J. 1 (2017), at 5, https://papers.ssrn.com/sol3/_papers.cfm?abstract_id=2850604 (in 1887, "article of manufacture" was a term of art that "referred to a tangible item made by humans—*other than* a machine or composition of matter—that had a unitary structure and *was complete in itself* for use or for sale").

52

219.     The Invalid Patents are design patents for the ornamental designs of vehicle lights.  These are minor sub-parts of a larger item, the entire vehicle.

220.     Patents on these sub-parts contravene the consumer's right to repair their own vehicle.  The consumer has already purchased a vehicle embodying the design patent for the lights, and so the consumer also has the right to repair the article that she has paid for, as long as she is not reconstructing a new patented article.

221.     As the Invalid Patents are not designs for "articles of manufacture," but an impermissible attempt to circumvent patent exhaustion and the consumer's right to repair her vehicle, these patents should be found invalid.

## COUNT I– NON-INFRINGEMENT OF THE '980 PATENT

222.     LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

223.     LKQ does not infringe the '980 Patent because the part that LKQ produces is not within the scope of and does not infringe the claim of the '980 Patent.

224.     As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that LKQ does not infringe the claim of the '980 Patent.

## COUNT II– NON-INFRINGEMENT OF THE '319 PATENT

225.     LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

226.     LKQ does not infringe the '319 Patent because the part that LKQ sells is a part that was manufactured by an OEM, therefore LKQ is immune from a claim of infringement under the doctrine of patent exhaustion.

227.    As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that LKQ does not infringe the claim of the '319 Patent.

## COUNT III– NON-INFRINGEMENT OF THE '474 PATENT

228.    LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

229.    LKQ does not infringe the '474 Patent because the part that LKQ sells is a part that was manufactured by an OEM, therefore LKQ is immune from a claim of infringement under the doctrine of patent exhaustion.

230.    As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that LKQ does not infringe the claim of the '474 Patent.

## COUNT IV– NON-INFRINGEMENT OF THE '217 PATENT

231.    LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

232.    LKQ does not infringe the '217 Patent because the part that LKQ sells is a part that was manufactured by an OEM, therefore LKQ is immune from a claim of infringement under the doctrine of patent exhaustion.

233.    As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that LKQ does not infringe the claim of the '217 Patent.

## COUNT V– NON-INFRINGEMENT OF THE '836 PATENT

234.    LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

235.    LKQ does not infringe the '836 Patent because the part that LKQ sells is a reconditioned/refurbished part and therefore immune from a claim of infringement under the doctrine of patent exhaustion.

236.    As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that LKQ does not infringe the claim of the '836 Patent.

## COUNT VI– NON-INFRINGEMENT OF THE '057 PATENT

237.    LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

238.    LKQ does not infringe the '057 Patent because the part that LKQ sells is a part that was manufactured by an OEM, therefore LKQ is immune from a claim of infringement under the doctrine of patent exhaustion.

239.    As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that LKQ does not infringe the claim of the '057 Patent.

## COUNT VII– NON-INFRINGEMENT OF THE '835 PATENT

240.    LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

241.    LKQ does not infringe the '835 Patent because the part that LKQ sells is a part that was manufactured by an OEM, therefore LKQ is immune from a claim of infringement under the doctrine of patent exhaustion.

242.     As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that LKQ does not infringe the claim of the '835 Patent.

## COUNT VIII– NON-INFRINGEMENT OF THE '583 PATENT

243.     LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

244.     LKQ does not infringe the '583 Patent because the part that LKQ sells is a part that was manufactured by an OEM, therefore LKQ is immune from a claim of infringement under the doctrine of patent exhaustion.

245.     As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that LKQ does not infringe the claim of the '583 Patent.

## COUNT IX– NON-INFRINGEMENT OF THE '865 PATENT

246.     LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

247.     LKQ does not infringe the '865 Patent because the part that LKQ produces is not within the scope of and does not infringe the claim of the '865 Patent.

248.     As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that LKQ does not infringe the claim of the '865 Patent.

## COUNT X – INVALIDITY OF THE '980 PATENT

249.     LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

250.     The claim of the '980 Patent is invalid as obvious over the prior art.

251.     The claim of the '980 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

252.     As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '980 Patent is invalid.

## COUNT XI – INVALIDITY OF THE '319 PATENT

253.     LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

254.     The claim of the '319 Patent is invalid as obvious over the prior art.

255.     The claim of the '319 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

256.     As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '319 Patent is invalid.

## COUNT XII – INVALIDITY OF THE '436 PATENT

257.     LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

258.     The claim of the '436 Patent is invalid as obvious over the prior art.

259.     The claim of the '436 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

260.     As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '436 Patent is invalid.

## COUNT XIII – INVALIDITY OF THE '474 PATENT

261.   LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

262.   The claim of the '474 Patent is invalid as obvious over the prior art.

263.   The claim of the '474 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

264.   As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '474 Patent is invalid.

## COUNT XIV – INVALIDITY OF THE '217 PATENT

265.   LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

266.   The claim of the '217 Patent is invalid as obvious over the prior art.

267.   The claim of the '217 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

268.   As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '217 Patent is invalid.

## COUNT XV – INVALIDITY OF THE '836 PATENT

269.   LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

270.   The claim of the '836 Patent is invalid as obvious over the prior art.

271.   The claim of the '836 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

272. As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '836 Patent is invalid.

## COUNT XVI – INVALIDITY OF THE '812 PATENT

273. LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

274. The claim of the '812 Patent is invalid as obvious over the prior art.

275. The claim of the '812 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

276. As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '812 Patent is invalid.

## COUNT XVII – INVALIDITY OF THE '003 PATENT

277. LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

278. The claim of the '003 Patent is invalid as obvious over the prior art.

279. The claim of the '003 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

280. As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '003 Patent is invalid.

## COUNT XVIII – INVALIDITY OF THE '057 PATENT

281. LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

282. The claim of the '057 Patent is invalid as obvious over the prior art.

283.     The claim of the '057 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

284.     As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '057 Patent is invalid.

<b>COUNT XIX – INVALIDITY OF THE '743 PATENT</b>

285.     LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

286.     The claim of the '743 Patent is invalid as obvious over the prior art.

287.     The claim of the '743 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

288.     As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '743 Patent is invalid.

<b>COUNT XX – INVALIDITY OF THE '574 PATENT</b>

289.     LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

290.     The claim of the '574 Patent is invalid as obvious over the prior art.

291.     The claim of the '574 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

292.     As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '574 Patent is invalid.

<b>COUNT XXI – INVALIDITY OF THE '063 PATENT</b>

293.     LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

294.     The claim of the '063 Patent is invalid as obvious over the prior art.

295.     The claim of the '063 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

296.     As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '063 Patent is invalid.

## COUNT XXII – INVALIDITY OF THE '835 PATENT

297.     LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

298.     The claim of the '835 Patent is invalid as obvious over the prior art.

299.     The claim of the '835 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

300.     As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '835 Patent is invalid.

## COUNT XXIII – INVALIDITY OF THE '583 PATENT

301.     LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

302.     The claim of the '583 Patent is invalid as obvious over the prior art.

303.     The claim of the '583 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

304.     As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '583 Patent is invalid.

## COUNT XXIV – INVALIDITY OF THE '865 PATENT

305.    LKQ realleges and incorporates all preceding paragraphs as if fully set forth herein.

306.    The claim of the '865 Patent is invalid as obvious over the prior art.

307.    The claim of the '865 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

308.    As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '865 Patent is invalid.

## PRAYER FOR RELIEF

WHEREFORE, LKQ prays for:

a.  A declaration that LKQ has not infringed and is not infringing, directly or indirectly, the claim of each of the Non-Infringed Patents;

b.  A declaration that the single claim of each of the Invalid Patents is invalid;

c.  An order that Hyundai and each of its officers, employees, agents, attorneys, and any persons in active concert or participation with them are restrained and enjoined from further prosecuting or instituting any action against LKQ or the purchasers of LKQ's products claiming that the alleged patents are infringed or from representing that LKQ's products or their use on networks operated by purchasers of those products infringe the alleged patents;

d.  A declaration that this is an exceptional case under 35 U.S.C § 285;

e.  An award to LKQ of its costs and attorney's fees;

f.  Such other relief as this Court or a jury may deem proper and just under the circumstances.

## **JURY DEMAND**

LKQ demands a trial by jury on all issues so triable.


Dated: June 11, 2021

Respectfully submitted,


*/s/ Barry F. Irwin, P.C.*
Barry F. Irwin, P.C.
Michael P. Bregenzer
**IRWIN IP LLC**
222 South Riverside Plaza
Suite 2350
Chicago, IL 60606
(312) 667-6080
birwin@irwinip.com
mbregenzer@irwinip.com

*Attorneys for Plaintiffs LKQ Corporation &
Keystone Automotive Industries*

63