UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LKQ CORPORATION and KEYSTONE AUTOMOTIVE INDUSTRIES, INC., ) ) ) Plaintiffs, ) ) v. ) ) ) HYUNDAI MOTOR AMERICA, INC. and ) HYUNDAI MOTOR COMPANY, ) ) Defendants. ) | Case No. 1:21-CV-03167 Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

LKQ Corporation and Keystone Automotive Industries, Inc., seek a declaratory judgment of non-infringement and invalidity of certain design patents owned by Defendants Hyundai America, Inc., and Hyundai Corporation.[1] R. 1, Compl.[2] Hyundai moves under Civil Rule 12(b)(2) to dismiss the suit for lack of personal jurisdiction. R. 20, Mot. to Dismiss. LKQ cross-moves for jurisdictional discovery. R. 26, Pl.'s Opp. For the reasons discussed below, LKQ's motion is granted in part and denied in part, and Hyundai's motion is denied without prejudice.

**I. Background**

LKQ is a corporation with its corporate office located in Chicago, Illinois. Compl. ¶ 1–2. LKQ and its subsidiary, Keystone Automotive Industries, import and

---

[1]The Court has subject matter jurisdiction over this federal-question case under 28 U.S.C. §§ 1331 and 1338(a).
[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

1

distribute replacement and repair parts for automobiles. *Id.* Hyundai Motor America is a corporation with its principal place of business in California. *Id.* ¶ 3. Hyundai Motor America distributes Hyundai-brand vehicles and parts in the United States, and some of those parts are covered by design patents owned by Hyundai Motor Company. *Id.* ¶ 3–4.

At issue in this case are 15 design patents for original equipment manufacturer (known in the industry as "OEM") headlamp and tail-lamp assemblies, which Hyundai both uses in its vehicles and also sells as replacement parts through dealers across the United States. R. 21, Decl. of Seungdo Kim, ¶¶ 2–3. In May 2020, LKQ's counsel contacted Hyundai's counsel to discuss potentially obtaining a license to (among other things) the Hyundai patents at issue in this case. R. 28, Decl. of Barry Irwin ¶ 5. This was in response to a design-patent infringement lawsuit filed by Hyundai against a different vendor of automotive replacement parts. *Id.* ¶ 6; *see Hyundai Motor America, Inc. v. Depo Auto Parts Indus. Co., Ltd.*, No. 8:18-cv-02151-JVS-KES (C.D. Cal. 2018). In response, Hyundai corresponded with LKQ's attorneys (who were in Chicago, Illinois) over email. Decl. of Barry Irwin ¶¶ 5, 7; Decl. of Barry Irwin Exh. A, R. 28-1. Hyundai's counsel first wrote to LKQ's counsel to confirm receipt of a voicemail left by LKQ, and expressed a plan to confer with the client (Hyundai) before providing a response. Decl. of Barry Irwin Exh. A at 3–4. Hyundai's counsel later followed up with a second email to LKQ's counsel, announcing that Hyundai was "not interested in licensing its trademarks to LKQ" at that time. LKQ. *Id.* at 2–3.

2

In February 2021, Hyundai sent a letter to LKQ Corporation concerning the 15 patents at issue in this case. Decl. of Seungdo Kim Exh. 1, R. 21-1. The letter expressed that Hyundai knew that LKQ's business involved making, offering, and selling aftermarket replacement headlamp and tail-lamp assembly parts, some of which are designed to fit Hyundai vehicle models. *Id*. The letter listed Hyundai's pertinent headlamp and tail-lamp assembly design patents and requested that LKQ review those patents and compare them to the lamps sold by LKQ. Specifically, the letter requested that LKQ or their counsel "examine these patents together with the Hyundai replacement lamps that LKQ offers for sale on its website." *Id*.

In response to this letter, LKQ's counsel contacted Hyundai's counsel and explained that they (LKQ and its counsel) were reviewing the assertions. Hyundai contends that, before this series of events, Hyundai had not corresponded with any other entity in Illinois about the patents-in-suit, except for LKQ. Decl. of Seungdo Kim ¶ 11. After that contact from Hyundai, LKQ filed this lawsuit, seeking declaratory judgment of noninfringement and invalidity of the design patents. Compl. ¶ 7. Hyundai has moved to dismiss for lack of personal jurisdiction, arguing that it did not have sufficient minimum contacts with Illinois. Def.'s Br., R. 23, at 8–12.

## II. Standard of Review

In any federal lawsuit, the plaintiff bears the burden of establishing that personal jurisdiction is proper when jurisdiction is challenged by the defendant. *Purdue Research Found v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). For personal-jurisdiction challenges, the operative rule is Federal Rule of Civil Procedure

3

12(b)(2). If material facts are disputed, then the Court must consider the need for discovery and perhaps an evidentiary hearing to resolve the disputes. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Then, "the plaintiff must establish jurisdiction by a preponderance of the evidence," *Purdue Research Found.*, 338 F.3d at 782, and "prove what it alleged," *Hyatt Int'l Corp.*, 302 F.3d at 713. This is in contrast to the normal rule for a motion to dismiss, under which "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### III. Analysis

In this patent case, Federal Circuit precedent governs whether Hyundai is subject to personal jurisdiction in Illinois. *See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F. 3d 1194, 1201 (Fed. Cir. 2003). A court has personal jurisdiction over a non-resident defendant if the forum state's long-arm statute permits service of process and the assertion of personal jurisdiction comports with due process. *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017). "The Illinois long-arm statute permits the exercise of personal jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 590 (7th Cir. 2021) (cleaned up).[3] So the relevant inquiry is "whether the exercise of personal jurisdiction would violate federal due process." *Mobile*

---

[3] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

4

*Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).

LKQ does not assert that general personal jurisdiction applies to Hyundai in Illinois. Instead, LKQ argues that *specific* personal jurisdiction applies. To assert specific personal jurisdiction, due process requires that a defendant have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *New World,* 859 F.3d at 1037 (cleaned up) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The "constitutional touchstone" is "whether the defendant purposefully established 'minimum contacts' in the forum State ... such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (cleaned up). In evaluating the exercise of jurisdiction, the Supreme Court "has long focused on the nature and extent of the defendant's relationship to the forum State." *Trimble* v. *PerDiemCo LLC*, 997 F.3d 1147, 1152–53 (Fed. Cir. 2021) (cleaned up).

In evaluating the defendant's relationship to the forum, "the minimum contacts inquiry involves two related requirements. First, the defendant must have purposefully directed its conduct at the forum state. Second, the claim must arise out of or relate to the defendant's contacts with the forum." *Maxchief Investments Ltd. v. Wok Pan, Ind.* 909 F.3d 1134, 1138 (2018) (cleaned up). These contacts may be sufficient even if "isolated and sporadic." *Burger King,* 471 U.S. 472. If the minimum-contacts element is met, then the court "assesses the reasonableness and fairness of exercising jurisdiction over an out-of-state defendant with an eye toward ensuring

that the exercise of jurisdiction does not offend the traditional notions of fair play and substantial justice." *Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1375 (Fed. Cir. 2022) (cleaned up). The Federal Circuit has articulated these steps in the form of a three-part test: "(1) whether the defendant purposefully directed its activities at residents of the forum; and (2) whether the claim arises out of or relates to the defendant's activities within the forum …; [and] (3) whether assertion of personal jurisdiction is reasonable and fair." *Apple,* 30 F.4th at 1375.

### A. Minimum Contacts

Hyundai argues that LKQ has not demonstrated that Hyundai had minimum contacts with the State of Illinois specifically relating to LKQ's claim, so personal jurisdiction cannot be asserted over Hyundai. Def.'s Br. at 8. Specifically, Hyundai argues that it had only one contact with the forum—the letter sent to LKQ in Chicago in February 2021—and that "such a single letter sent by Hyundai does not constitute 'purposeful availment' and is insufficient to create specific personal jurisdiction in Illinois." *Id.*

Under the governing case law, Hyundai is mistaken that minimum contacts have not been established here. The Federal Circuit most recently addressed this issue in *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147 (Fed. Cir. 2021). The appellate court clarified that "there is no general rule that demand letters can never create specific personal jurisdiction." *Trimble*, 997 F.3d at 1156; *see also Jack Henry & Associates, Inc. v. Plano Encryption Technologies LLC,* 910 F.3d 1199, 1206 (Fed. Cir. 2018) (denying "the proposition that patent enforcement letters can never provide the

6

basis for jurisdiction in a declaratory judgment"); *New World,* 859 F.3d at 1037 ("[T]he defendant purposefully directs his activities at residents of the forum when the defendant sends a cease-and-desist letter to a potential plaintiff in that particular forum. And a subsequent declaratory judgment action by that potential plaintiff 'arises out of or relates to' the defendant's activity—namely, the cease-and-desist letter.").

Here, in February 2021, Hyundai sent a demand letter warning LKQ of the potential infringement. Although the letter never used the explicit word "infringe," it warned that LKQs aftermarket parts "appear to be either very similar to, or exact copies of the … headlamp and tail lamp assemblies that Hyundai builds into its new vehicles and sells" and asked LKQ to examine Hyundai's patents and share "any information as to how the Hyundai replacement headlamps and tail lamp assemblies offered by LKQ materially differ from Hyundai's patented designs." Decl. of Seungdo Kim Exh. 1 at 1. With that type of warning—in effect, your auto parts look exactly like our patented designs—the letter was the functional equivalent of a cease-and-desist letter accusing LKQ of infringement. The accusation was thinly veiled.

"[C]ease-and-desist letters alone often are substantially related to the cause of action (thus providing minimum contacts).*" Red Wing* at 1360. This is the case here: Hyundai purposefully directed this letter to Illinois effectively accusing LKQ of infringing the design patents and expressly asking LKQ for an explanation. This case directly arises out of this communication, insofar as LKQ sought declaratory relief in light of the allegations of infringement that Hyundai was putting forward.

7

Although "even a single contact with a forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim," *Red Wing* at 1359, here there is more than just the single cease-and-desist letter to which Hyundai points. *Trimble* also explained that "the Supreme Court's recent decision in *Ford Motor Co.* [*v. Mont. Eighth Jud. Dist.,* 141 S.Ct. 1017 (2021)] has established a broad set of a defendant's contacts with a forum are relevant to the minimum contacts analysis." *Trimble*, 997 F.3d at 1156. According to the Federal Circuit, *Ford* "emphasized that a defendant's contacts must show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Id.* (cleaned up) (quoting *Ford*, 141 S. Ct. at 1025).

In *Ford*, the issue was whether personal jurisdiction could be exercised over Ford Motor Company in a State in which two Ford vehicles were in an accident but neither of the two cars in the accident had been sold in the State. The Court held that personal jurisdiction was appropriate because the "veritable truckload of contacts with the states—although not directly related to the underlying suit—were still relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit." *Id.* (quoting *Ford,* 141 S. Ct. at 1041–1042).

In this case, in addition to the cease-and-desist letter directed into Chicago, Hyundai sent other messages into Illinois. For example, Hyundai refused to grant a license to LKQ and announced that refusal in an email send to LKQ's counsel in

8

Illinois. Decl. of Barry Irwin, Exh. A. Those acts are enough to satisfy the minimum-contacts inquiry.

### B. Fair and Reasonable

In arguing that the letter was insufficient to establish minimum contacts, Hyundai mistook the requirements of the "minimum contacts" element of the due-process inquiry with the requirements of the "fairness" element of the test. As *Red Wing* explained, "the statement that cease-and-desist letters alone do not suffice to create personal jurisdiction lies in the second prong of the traditional Due Process inquiry," not in the minimum contacts prong. *Red Wing,* 148 F.3d at 1360–61 (cleaned up). Specifically, "[e]ven though cease-and-desist letters alone are often substantially related to the cause of action (thus providing minimum contacts), the minimum requirements inherent in the concept of fair play and substantial justice … defeat the reasonableness of jurisdiction." *Id.* This is because fairness requires "afford[ing] a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum …. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness." *Id.* (cleaned up). *See also New World,* 859 F.3d at 1037–38 ("[U]nder the third part of the test … this court has held that it is improper to predicate personal jurisdiction on the act of sending ordinary cease and desist letters into a forum, without more.").

After the plaintiff has established a *prima facie* case for personal jurisdiction by demonstrating that the first two elements are met, then the burden shifts to the defendant to present a "compelling case that the presence of some other

9

considerations would render jurisdiction unreasonable.*" Burger King*, 471 U.S. at 477. LKQ contends that Hyundai has forfeited any argument over why the exercise of jurisdiction would be unfair or unreasonable because Hyundai allegedly did not address the fairness element in the briefing. *See* Pl.'s Opp. at 11. As discussed above, however, this is largely because Hyundai mistakenly analyzed those activities under the minimum-contacts element. *See also LKQ Corp. v. Kia Am., Inc.* 2022 WL 1092119, at *6 (N.D. Ill. Apr. 12, 2022) ("The one potential fly in the ointment is that Kia presents its arguments to this court under the wrong prong of the specific jurisdiction analysis—specifically, it contends that its communications with LKQ fail to satisfy the minimum contacts requirement, not that the court's assertion of personal jurisdiction over it would not satisfy the 'fair play and substantial justice' requirement."); *id.* ("Given the hazy border between the two principal prongs of the specific jurisdiction analysis in those opinions, Kia can be forgiven for mistakenly categorizing its argument under the minimum contacts prong rather than the 'fair play and substantial justice' prong."). So Hyundai did present the arguments (and LKQ had a chance to respond to them), but just made the arguments in the wrong part of the analysis.

To examine the fairness element, LKQ requests jurisdictional discovery on several topics, including information on Hyundai's sales of the relevant vehicles in Illinois; sales of the relevant replacement parts covered by the patents at issue in Illinois; marketing efforts directed at Illinois; litigation history in Illinois; and infringement letters or outreach in Illinois regarding other patents. Pl.'s Opp. at 15. That

10

information is relevant to determining the burden on Hyundai of litigating this case in Illinois, and thus goes to whether exercise of personal jurisdiction comports with fairness. *See Trimble*, 997 F. 3d at 1153 (outlining the factors the Supreme Court has found relevant to the fairness prong, including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and shared interest of the several States in furthering fundamental substantive social policies") (cleaned up). LKQ has demonstrated enough of a *prima facie* case on personal jurisdiction to conduct limited jurisdictional discovery on those particular categories, which in turn will help answer the question of whether the exercise of personal jurisdiction will comport with fairness.

## IV. Conclusion

In sum, LKQ's motion for jurisdictional discovery is granted in part and denied in part, and Hyundai's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is denied without prejudice. LKQ is permitted to seek limited discovery from Hyundai on its state court litigation in Illinois and on the fairness (or not) of exercising personal jurisdiction over Hyundai. After discovery, Hyundai may move again to dismiss, but this time incorporating the results of the jurisdictional discovery. If a motion to dismiss is filed, then the Court will set a briefing schedule.

On or before April 12, 2023, the parties shall file a joint status report proposing the jurisdictional-discovery deadline (as well as interim deadlines for issuing written discovery and for taking depositions, if needed), and also reporting any other matters

that the parties wish to bring to the Court's attention. The Plaintiffs' motion to lift the discovery stay, R. 61, is terminated without prejudice because the appropriate discovery right now is personal-jurisdiction discovery as just described. To track the case only (no appearance is required), a status hearing is set for April 21, 2023, at 8:30 a.m.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2023

that the parties wish to bring to the Court's attention. The Plaintiffs' motion to lift the discovery stay, R. 61, is terminated without prejudice because the appropriate discovery right now is personal-jurisdiction discovery as just described. To track the case only (no appearance is required), a status hearing is set for April 21, 2023, at 8:30 a.m.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2023